# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# AT CINCINNATI

| | | |
|---|---|---|
| TEDDY NICHOLS, | ) | Case No. C-1-02-0045 |
| | ) | |
| Plaintiff, | ) | Judge Beckwith |
| | ) | Magistrate Hogan |
| v. | ) | |
| | ) | |
| INDIANA MICHIGAN POWER CO. | ) | |
| RIVER TRANSPORTATION DIVISION | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION IN LIMINE OF DEFENDANTS

COMES NOW Defendants, Indiana Michigan Power Co. River Transportation Division and American Electric Fuel Supply, River Transportation Division, and respectfully move this Court *in limine* for an Order excluding the proposed expert testimony Captain Ronald L. Campana pursuant to Federal Rule of Evidence 702. This Motion is based on the deposition of Campana, filed separately herein, the Federal Rules of Evidence, and the cases decided thereunder, all of which conclusively demonstrate that Campana is not qualified to testify as an expert in this matter, his opinions are not relevant or reliable, and his opinions have no proper bases in fact. This Motion is supported by the following Memorandum.

                                Respectfully requested,

                                **s/ Todd M. Powers**
                                Todd M. Powers (OH #0027109)
                                Megan C. Ahrens (OH #0076355)
                                **Schroeder, Maundrell, Barbiere & Powers**
                                11935 Mason Road, Suite 110
                                Cincinnati, Ohio 45249
                                513-583-4212 Phone
                                513-283-4203 Fax
                                **Email**  tpowers@smbplaw.com

## **MEMORANDUM**

This case arises from a Complaint filed on January 22, 2002 in which Plaintiff, Teddy Nichols ("Plaintiff"), asserts causes of action against Defendants Indiana Michigan Power Co. River Transportation Division and American Electric Fuel Supply, River Transportation Division ("Defendants"), sounding in negligence under the Jones Act, 46 App. U.S.C. § 688, breach of the warranty of seaworthiness, and for maintenance and cure. (Third Amended Complaint, ¶ 2, Doc. 42). Plaintiff's claims allegedly relate to the handling of certain locklines and rigging wires beyond his physical capacity, allegedly resulting in repetitive trauma and a further traumatic incident on or around August 28, 2001. (Third Amended Complaint, ¶ 8, Doc. 42). Plaintiff proposes to introduce expert testimony from Captain Ronald L. Campana ("Campana") at the trial of the within action. (Witness List, p. 6, Doc. 25; Supp. Expert Identification, p. 1, Doc. 45).

As set forth below, Campana is a independent marine surveyor without special training, experience or knowledge concerning barge unloading systems or their design and mechanical construction. (Campana depo., pp. 9-10,12,15-16). Campana has admitted that he has never worked at, visited, or examined any coal unloading terminals on the Ohio or Kanawah Rivers other than his inspection of the Sporn Power Plant ("Sporn") in connection with this litigation. (Campana depo., p. 16). Further, Campana has no training in marine safety and has no training or expertise in the fields of engineering or ergonomics. (Campana depo., p. 9). Under these circumstances, Campana's testimony would mislead the trier of fact and would not assist in understanding the evidence or determination of a fact in issue. Accordingly, Campana should be precluded from testifying pursuant to Rule 702 of the Federal Rules of Evidence.

I.      **DEPOSITION TESTIMONY OF CAPTAIN RONALD L. CAMPANA**

Campana is an independent marine surveyor and consultant for Campana Marine Service, Inc. (Campana depo., p. 6). In connection with this employment, 50 percent of Campana's work involves representing stevedores in ascertaining the condition of cargo. (Campana depo., p. 18). The remainder of his work pertains to consulting with owners, charterers and receivers of cargo. (Campana depo., p. 18). None of his consultant or survey work has involved participation in the design and/or mechanical operation of barge unloaders. (Campana depo., p. 15). Moreover, Campana has never worked as a consultant relating to allegations of personal injury as a result of being jerked by a pull-out cable or other similar mechanism. (Campana depo., p. 15).

Campana earned his bachelors degree in marine transportation from Kings Point. (Campana depo., p. 9). He does not have a degree in engineering or ergonomics and does not hold himself out as an expert in these fields. (Campana depo., p. 9). Since his graduation from Kings Point in the early 1970s, Campana's formal training and education has been limited to a single self-study course with National Cargo Bureau Grain Stability in 1982. (Campana depo., p. 9, Ex. C-2).

Campana holds himself out as an expert in marine safety, marine operations, vessel operations and "common sense." (Campana depo., p. 10). This expertise is based entirely on Campana's generic maritime experience focused almost exclusively on the Lower Mississippi River. (Campana depo., p. 12). His expertise in marine and vessel operations was allegedly achieved through his work experience as director and manager of operations for Prudential Lines in 1975-1976, almost 30 years ago. (Campana depo., pp. 10-11).

Campana's claim of expertise in marine safety is a product of 30 years of work in the marine industry. (Campana depo., p. 10). Campana concedes, however, that he has no training in marine

-3-

safety. (Campana depo., pp. 20-21). Further, Campana has never authored safety rules or procedures for a facility such as Sporn, never created an instructional film for seaman or stevedores, and never created procedures to govern the work practices of individuals unloading bulk cargo from barges. (Campana depo., pp. 20-21).

Moreover, Campana has not worked as a master or vessel crewmember since March 31, 1981. (Campana depo., pp. 37-38). Campana has not worked in a position similar to that of Plaintiff since 1973, over 30 years ago. (Campana depo., p. 38). What is more, Campana did not work with coal barges at that time and had no duties involving the delivery of barges to an unloading facility such as Sporn. (Campana depo., p. 39).

Campana has never designed a barge unloading system, been involved in the mechanical construction of a barge unload system, or even been around a barge unload system such as the one involved in this litigation. (Campana depo., p. 12). In fact, Campana has never been to a coal unloading terminal on the Ohio or Kanawah Rivers aside from his inspection of Sporn in connection with the instant action. (Campana depo., p. 16). Campana's exposure to coal unloading facilities is limited to watching the safety video produced by Defendants. (Campana depo., p. 16).

In his report, Campana basis his opinions, in large part, on the existence of a "shock load" of 178 pounds. (Campana depo., Ex. C-1). Yet, the actual testing and determination of the shock load was solely conducted by Gary D. Herrin, Ph.D. ("Herrin") during his inspection of Sporn on September 25, 2003. (Campana depo., p. 48, Ex. C-1). According to Campana, Herrin's tests revealed the hand-off of the haul-out cable used in the barge unloading process at Sporn carried a shock load of 178 pounds. (Campana depo., pp. 48-49). However, Campana admits he did not contribute in any way to testing the shock load and is completely relying on Herrin in this regard.

(Campana depo., pp. 48-49). In fact, Campana could not state whether attaching the measuring meter to the wire, as opposed to the soft line of the pull-out cable, would have any effect on the test results. (Campana depo., p. 57).

## II.    STATEMENT OF LAW

Pursuant to Evidence Rule 104(a), the determination of whether an individual qualifies as an expert is within the province of the court. Fed. R. Evid. 104(a). In this regard, Federal Rule of Evidence 702 governs the qualifications necessary to accord a witness expert status. Rule 702 reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 serves two primary functions. First, Rule 702 articulates the standards used to determine whether expert testimony should be admitted in a particular case. Second, the Rule provides criteria to be applied in determining whether an individual tendered as an expert should be accorded expert status by the trial court.

The aggregation of three Supreme Court decisions set forth the standards for determining whether expert testimony is admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997). When confronted with a proffer of expert testimony, the court has a

"gatekeeping" function that requires it to perform a multi-factor inquiry to ensure the testimony admitted is relevant and reliable. *Daubert*, 509 U.S. at 592.

    1.    **QUALIFICATION**

First, Rule 702 establishes the threshold for expert qualification. A witness may testify as an expert if qualified by knowledge, skill, experience, training or education. Fed. R. Evid. 702; *Kumho Tire*, 526 U.S. at 147.

In *Smelser v. Norfolk Southern Ry.*, 105 F.3d 299, 303 (6th Cir. 1997), the Sixth Circuit Court of Appeals held that a biomechanical engineer's testimony should have been excluded because, *inter alia*, his opinions went beyond his expertise in biomechanics. In so holding, the Sixth Circuit clarified the proper inquiry under Rule 702:

> When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), *the court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for the witness to answer a specific question."* Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1954), *cert. denied*, 513 U.S. 111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). The trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony.

*Id*. (emphasis added).

    2.    **RELEVANCY**

The court must also determine whether the anticipated testimony is relevant. *Daubert*, 209 U.S. at 591; *Smelser*, 105 F.3d at 303. This prong of the multi-factor inquiry is necessitated by the requirement contained in Rule 702 that expert testimony assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert*, 209 U.S. at 591.

The relevancy requirement has been interpreted to mean that expert testimony must "fit" the

facts of the case, that is, there must be a connection between the scientific, technical or specialized research or test result being offered and a disputed factual issue in the case in which the expert will testify. *Id*. at 592. The party proffering expert testimony must show by a "preponderance of proof" that the expert whose testimony is being offered is qualified and will testify to scientific, technical or specialized knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case. *Id*. at 592 n. 10.

### 3. RELIABILITY

In determining the admissibility of expert testimony, the court must assess the reliability of the proffered testimony to determine whether the expert is proposing to testify on scientific, technical or other specialized knowledge. *Daubert*, 509 U.S. at 592; *Kumho Tire*, 526 U.S. at 141. The purpose of the reliability inquiry is to make certain that an expert, whether basing his testimony on professional studies or personal experience, employs the same level of intellectual vigor that characterizes the practice of an expert in the relevant field. *Kumho Tire*, 526 U.S. at 152.

The assessment of the reliability of expert testimony is a flexible inquiry. *Kumho Tire*, 526 U.S. at 150. However, Rule 702 lists three distinct reliability requirements for expert testimony to be admissible: 1) The testimony must be based sufficiently based upon reliable facts or data; 2) The testimony must be the product of reliable principles and methods; and 3) The expert witness must have applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. These requirements were added to Rule 702 in the year 2000 in an effort to codify the Supreme Court's holding in *Daubert* and its progeny. The Advisory Committee Note unequivocally establishes that if expert testimony fails any part of the three reliability requirements delineated in Rule 702, the testimony shall be excluded. Fed. R. Evid. 702.

### 4. PROPER BASIS

In addition to Rule 702, the admissibility of expert testimony is regulated by Evidence Rule 703, which contains limitations on the facts and/or data an expert may rely upon to ensure a proper basis exists for the expert's opinions. Rule 703 reads as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

### 5. PROBATIVE VALUE

Finally, expert testimony may be excluded when it is more prejudicial than probative, confusing to the trier of fact, or unduly time consuming. Fed. R. Evid. 403, 703.

## III. ARGUMENT OF LAW

### 1. CAPTAIN RONALD L. CAMPANA DOES NOT QUALIFY AS AN EXPERT WITNESSES AND SHOULD BE PRECLUDED FROM TESTIFYING AT THE TRIAL OF THIS ACTION

Campana is not qualified to provide expert opinion testimony. Pursuant to the request of counsel for Plaintiff, Campana has opined that Plaintiff was not provided a safe place to work, Defendants violated safety rules by requiring Plaintiff to handle the pull-out cable alone, and the

safety video created by Defendants was insufficient. (Campana depo., Ex. C-1). However, as more fully set forth above, Campana admits he has no training in the area of marine safety. (Campana depo., pp. 20-21). In addition to his lack of training, Campana's formal education was completed in the early 1970s with the exception of a solitary self-study course in 1982. (Campana depo., p. 9, Ex. C-2). In addition, he has no training or education in engineering or ergonomics and does not hold himself out as an expert in these fields. (Campana depo., p. 9). Thus, Campana does not qualify as an expert by education or training.

Furthermore, Campana cannot qualify as an expert in marine safety under the guise of specialized skill, knowledge or experience. Campana has never written or implemented safety rules for a facility such as Sporn, never created a safety video for seamen and never implemented or enforced training or work protocols for unloading bulk cargo from barges. (Campana depo., pp. 20-21). As a result, Campana cannot claim to have any specialized or technical skill with regard to the safety of the barge unloading system used by Plaintiff.

Campana's lack of specialized skill, knowledge, or experience relating to the technical workings of barge unloading systems is highlighted by the fact that Campana never visited a barge unloading facility on the Ohio or Kanawah Rivers until he visited Sporn in connection with the instant litigation. (Campana depo., p. 16). He has never designed a barge unload system, been involved in the mechanical construction of a barge unload system, or worked around a barge unload system such as Sporn. (Campana depo., p. 12). Campana's knowledge and experience with such facilities is limited to the information gained from watching Defendants' safety video and therefore cannot be said to be beyond the province of any layperson. (Campana depo., p. 16).

Moreover, Campana's work experience in the marine industry is insufficient to confer expert

status. Campana has not worked as a master or vessel crewmember since March 31, 1981, nor has he worked in a position similar to Plaintiff since 1973. (Campana depo., pp. 37-38). Even at the time Campana was working aboard inland river vessels, he did not work with coal barges and his duties did not include delivery of barges to an unloading facility such as Sporn. (Campana depo., p. 39). His consultant and survey work has not involved participation in the design and/or mechanical operation of barge unloaders. (Campana depo., p. 15). In fact, Campana's survey and consulting work primarily focuses on cargo and the representation of cargo owners. (Campana depo., p. 18).

For each of the foregoing reasons, Campana's qualifications do not provide a foundation upon which he may answer the specific questions raised by this litigation. Campana does not qualify as an expert witness through knowledge, skill, experience, training or education as required by Federal Rule of Evidence 702 and should therefore be precluded from testifying at the trial of this action.

2. **THE TESTIMONY PROFFERED BY CAPTAIN RONALD L. CAMPANA IS NOT RELEVANT OR RELIABLE AND THEREFORE SHOULD BE EXCLUDED**

The relevancy requirement for the admission of expert testimony mandates that the proffered testimony assist the trier of fact. Fed. R. Evid. 702; *Smelser,* 105 F.3d at 303. There are dual methods by which expert testimony may be deemed relevant and assist the trier of fact: 1) The testimony may aid in the understanding of the evidence; and 2) The expert may assist in determining a fact in issue. The testimony proffered by Campana is not relevant.

The salient issues of this case revolve around the design, construction and safety of the barge unload system in use at Sporn. For the reasons set forth more fully above, Campana has absolutely

no specialized or technical training in the design and/or construction of barge unload systems that could assist the trier of fact in understanding this issue. (Campana depo., pp. 12,15,39). Further, Campana admits he has no training in marine safety, engineering or ergonomics. (Campana depo., pp. 9, 20-21). Thus, it is apparent that the testimony of Campana will not assist the trier of fact in understanding the evidence or determining a fact in issue.

In addition to his sparse qualifications, the testing and measurements upon which Campana places great reliance in supporting his opinions were not conducted by him, but by Herrin. (Campana depo., pp. 48-49). As a result, it is inconceivable how Campana's testimony concerning the scientific findings of another will assist the trier of fact. The person able to provide relevant expert testimony in this regard would be Herrin, not Campana. Rather than assisting the trier of fact, Campana's testimony based on Herrin's testing and conclusions would likely mislead the fact finder.

Under these circumstances, Campana's testimony does not satisfy the Rule 702 reliability prong either. Rule 702 carries three requirements of reliability: 1) The testimony must be based sufficiently based upon reliable facts or data; 2) The testimony must be the product of reliable principles and methods; and 3) The expert witness must have applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Because Herrin, not Campana, conducted the shock load testing, took the measurements, and concluded the pull-out cable carried a shock load of 178 pounds, Campana's testimony cannot fulfill the reliability requirements. Campana did not gather the data, did not utilize scientific principles, and did not apply those principles to the data. As a result, Campana's testimony is not reliable and must be excluded.

Campana is not qualified as an expert in marine safety and/or the design and construction of barge unloading systems and therefore cannot be said to have a heightened ability to assist in the

understanding of the evidence. Campana's testimony does not "fit" the facts of the case and there is no connection between Campana's alleged technical or specialized knowledge and a disputed factual issue. *Daubert*, 209 U.S. at 592. For these reasons, Campana should be excluded from providing expert testimony at the trial of the within action.

**IV.    CONCLUSION**

For each of the foregoing reasons, Defendants Indiana Michigan Power Co. River Transportation Division and American Electric Fuel Supply, River Transportation Division respectfully request the Court issue an Order, *in limine*, excluding the proposed expert testimony of Captain Ronald L. Campana.

                                      Respectfully requested,

                                      **s/ Todd M. Powers**
                                      Todd M. Powers (OH #0027109)
                                      Megan C. Ahrens (OH #0076355)
                                      Attorneys for Defendants
                                      **Schroeder, Maundrell, Barbiere & Powers**
                                      11935 Mason Road, Suite 110
                                      Cincinnati, Ohio 45249
                                      513-583-4212 Phone
                                      513-283-4203 Fax
                                      **Email**  tpowers@smbplaw.com

## CERTIFICATE OF SERVICE

_____I hereby certify that a true and accurate copy of the foregoing was served upon the following by electronic filing and/or U.S. mail this 24th day of June, 2004:

Gary Wm. Baun, Esq.
O'Bryan Baun Cohen Kuebler
401 S. Old Woodward, Suite 320
Birmingham, MI 48009
**Attorney for Plaintiff**

      **s/ Todd M. Powers**
Todd M. Powers (OH #0027109)
Megan C. Ahrens (OH #0076355)
Attorneys for Defendants
**Schroeder, Maundrell, Barbiere & Powers**
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
513-583-4212 Phone
513-283-4203 Fax
**Email**  tpowers@smbplaw.com