# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISON - CINCINNATI

### PRELIMINARY REPORT

---

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

---

## EXPERT'S WRITTEN REPORT
(RULE 26(a) (2)  (b) FRCivP)

### DECEMBER 20, 2003

## CASE No :  C-1-02-0045

I, Captain Ronald L. Campana designated expert for the plaintiff, Mr. Teddy Nichols, herewith provide the written report concerning matters on which I am expected to offer testimony on in accordance with Rule 26(a) (2) (b) of the Federal Rules of Civil Procedure.This report has been prepared at the request of Mr. Gary Baun of the Law Firm O'Bryan, Baun, Cohen.

## *CONTENTS*

SUMMARY..............................................................................2-4

CONCLUSIONS AND OPINIONS............................................................5-8

PROFESSIONAL BACKGROUND AND EXPERIENCE.........................9-12



## TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally

### INTRODUCTION

The undersigned, Captain Ronald L. Campana has been retained by the Law Firm of O'Bryan, Baun & Cohen to consider the issues and facts concerning the accident, which occurred to Mr. Teddy Nichols, while working as a deckhand onboard the M/V "Lakin Terminal"on August 28, 2001.

**The following documents and information were reviewed as part of the opinion :**

1.     Depositions of Mr. Teddy Nichols dated July 10, 2002 and February 12, 2003;

2.     Depositions of Mr. Mark Clay dated July 30, 2002 and  February 12, 2003;

3.     Deposition of Mr. Michael Weisend dated July 30, 2002;

4.     Deposition of Mr. Jeff Darst dated February 12, 2003;

5.     Deposition of Mr. Timmothy Ramey dated July 10, 2002;

6.     Deposition of Mr. Steve Edens dated November 26, 2002

7.     Deposition of Mr. Charles Johnson dated February 12, 2003;

8.     American Electric Power files for Mr. Teddy Nichols;

9.     Photocopy of Agreement between United Steel Works of America AFL-CIO-CLC and Indiana Michigan Power Company River Transportation Department Division Effective January 23, 2001 to March 31, 2004 pages 36, 37 42, 43,56 and 57;

10.    Safety Rule Book for American Electric Power River Transportation pages iv, v, pages 12, 22 and 23;

11.    Indiana Michigan Power Company Water Transportation Payroll records for August 16-31, 2001

12.    M/V Lakin Terminal's vessel logs dated August 27th, 28th and 29th, 2001

13.    Philip Sporn Power Plant crane operators hand logs from 8/11/01 to 9/3/01;

14.    Report of Accident or Illness River Transportation (Boat Workers) dated 8/29/01 from M/V Lakin Terminal on Teddy Nichols;

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

15. Pleasant Valley Hospital Records (ER Triage Assessment) dated 8/29/01 and 12/31/01

16. Family Urgent care Center records dated 8/30/01;

17. ACCIDENT AND INJURY REPORTING FORM dated 9/6/01;

18. Letters/Reports from Dr. Robert W. McCleary dated 9/06/01- 4/23/02;

19. Letter dated 6/5/02 ,11/27/02, 1/8./03 and 3/5/03to Dr. McCleary from Dr. Larry T. Todd, Jr.

20. Inspection of the Philip Sporn Power plant on September 25, 2003

21. Drawings of the cells and fleet arrangements of the Philip Sporn Power Plant as provided by the plant.

22. Video Tape labeled "Barge Handler / Dockhand Safety Training Copy from American Electric Power.


**I have been asked to render opinions on the following:**


1. Whether the Owners and Operators of the M/V "Lakin Terminal" provided Mr. Teddy Nichols with a safe place to work.

2. Whether the Owners and Operators of the Philip Sporn Power Plant and American Electric Power provided Mr. Teddy Nichols with a safe place to work as well as the proper training and supervision and manpower to safely do his assigned duties.

3. Whether the Captain of the M/V Lakin Terminal allowed the vessel to operate in a dangerous manner, by making the deckhands handle wires that were too heavy to handle and in violation of the company safety manual.

4. Whether there were safer and alternative methods of performing the same task that the crew of the M/V Lakin terminal were asked to accomplish.

## TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally

### BACKGROUND INFORMATION

Mr. Teddy Nichols was employed by as a deckhand onboard the tugboat "Lakin Terminal" which was working at the Philip Sporn Power Plant on August 28, 2001. The Tug Lakin Terminal was responsible for bring loaded coal barges to the gantry crane and removing empty barge from the loading crane. To do this, the company has the tug bring a loaded barge alongside the empty barge, change out the barge hauling wires from the empty to the loaded barge, have the clamshell bucket of the gantry take a bit of the coal in the loaded barge and hold that barge alongside the empty while the tug releases from the load and shifts to the empty barge. Then the empty is removed from the cells under the crane. Once the empty is removed, the crane trolleys in bringing the loaded barge under the gantry.

In the Safety Video produced by American Electric Power, herein referred to as AEP, this procedure is not mentioned or shown. And the method to secure the barges to the cells with the barge hauling wires is not the same method used at the Philip Sporn Power Plant. The video shows the barge hauling wires having attachments clamped onto the up and down rivers wires that connect to the timberheads of the barges. This is in the form of a wire with a eye. In this manner, a deckhand does not have to hold more than a few feet of wire and all the weight is supported by the hauling cable wire. At the Philip Sporn Power Plant, the wires that lead directly from the winches on the gantry crane are led up and down the river one cell length which is 175' as per the plant diagram. That means when the wires are "slacked for removal from the empty barges to the loaded barge, there is at least 175 feet of wire being handles by a deckhand. ¾" wire rope has a weight per foot of approximately one (1) pound meaning a deckhand has to potentially be able to hold 175 pounds

This report will show that the Owners, Operators and Captain of the tugboat "Lakin Terminal" failed to provide Mr. Teddy Nichols with a safe place to work, which caused and or contributed to his injury.

4

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

## SUMMARY OF FACTS AND OPINIONS

### (1)

**The captain operated the M/V Lakin Terminal at the time of the accident in an unsafe and unseaworthy manner.**

a) Two deckhands are required to safely handle the wires at the Philip Sporn Power Plant as the wire being handles was in excess of the 35 feet safety guideline in the safety manual. This was visible and obvious to the captain and there had been complaints about handling these wires numerous times in the past.

b) The tug captain did not have a proper understanding of how the barge hauling cables worked off the winches. Captain Clay believed the cable had to be pulled slack by his tug when in fact; they were able to be slacked under power buy the crane operator.

c) This lack of understanding only exacerbated the situation for the deckhands trying to handle the wires. Tests conducted on September 25, 2003 showed the shock load on a deckhand handling the wire to be 180 pounds pull.

It is the opinion of the undersigned that the manner and method employed to change out the barges at the Philip Sporn Power Plant is done in a dangerous and unsafe manner.

The Captain knew there was a high differential between the loaded and empty barge of greater than eight (8') feet and only had one man assigned to each barge. And he most definitely knew the wires were longer than 35' as stated in the company safety manual.

### (2)

**The Owners, Operators and Captain of the tug "Lakin Terminal" failed to provided Mr. Teddy Nichols with a safe place to work.**

AEP and the Philip Sporn Power Plant failed to provide a safeplace to work as the entire operation of shifting the empty barges out and swapping with a loaded barge violated company safety policy. All persons connected with this operation knew the barge hauling cables were in excess of 35 feet and to ask any person to handle them was in violation of the

---

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

---

company's safety policy. Page iv of the Safety Rule Book for Corporate Safety Policy of AEP states:

**RESPONSIBILITIES**:

4. Supervisors are responsible for the prevention of accidents in the work group, including:

a) Responsibility for the proper training of the employees reporting to them. Job Hazards and safety procedures should be fully explained to employees before they begin work;

b) Responsibility to see that employees use required PPE in accordance with safety and health rules and practices;

c) Enforcement of company rules and governmental regulations regarding safety;

d) Investigation of all accidents and near misses and preparing appropriate accident reports.

5.     Human resources and safety and health personnel have the responsibility to provide advice, guidance, and any aid as may be needed by management in preventing accidents, including;

   a) Developing injury/illness prevention methods, procedures, and programs.


**LIFTING AND CARRYING**          (PAGE 12 SAFETY RULE BOOK)

**2. Barge wires over 35 feet in length must be lifted or carried at least two workers.**


# Faulty Safety Video

1) Does not address the situation at the Philip Sporn Power Plant regarding the swapping out of barges as testified to by Mr. Michael Weisend on page 9 lines 10-11. In this video, the timberhead wires that connect to the barge hauling wires are an attachment off the main wires and not as viewed at the plant. Secondly, the video shows deckhands improperly making fast rope lines on timberheads. The manner and method depicted shows making knots in the lines against the timberhead. If this line becomes taught, the knot may have to be cut in an emergency thereby delaying the process of untying and putting the deckhand in harms way. Deck lines are never secured by knots.

## TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally

### PROPER PROCEDURE FOR SWAPPING OUT BARGES ALONGSIDE CELLS

1) Using the hooks on the cells, two men remove the spliced eye from the barge hauling cable and set in on a hook attached to the cell. Then, using a softline (mooring rope), which is also attached to the cell, walk the softline eye over the empty to the load and pass the eye to a man on the empty. This line does not have to be larger than 2" in diameter and made of polypro. Since the bucket has control of the loaded barge the rope lines are there for safety. Once the empty barge is removed and the loaded barge brought alongside the cell, the deck hands can remove the wire eye from the holding position on the cell and drop it over the timberhead. This is standard procedure when required in the Lower Mississippi River. It will require more than one deckhand per barge on the empty barge.

2) Owing to the short distance from the empty and loaded fleets to the gantry crane, the easiest method is to remove the empty barge, fleet it, retrieve a loaded barge and bring it alongside the cell. In this manner, additional personnel are not required and the operations can be safety accomplished with minimal downtime.

3) Employ a second tug to assist the first tug during periods of high water/rapid current.

### CONCLUSIONS

It is the opinion of the undersigned that the Owners, Operators and Captain of the tugboat "Lakin Terminal" and the Owners and Operators of the Philip Sporn Power Plant were responsible for the accident, which occurred to Mr. Teddy Nichols for the following reasons:

- The Owners, Operators and Captain of the tugboat "Lakin Terminal failed to provide Mr. Teddy Nichols with a safe place to work.

- The length of the wires being handled by the deckhands/dockworkers were in violation of the Safety Rule Book and complaints about this were ignored.

- AEP failed to perform a proper risk assessment specifically when they made the safety video of this operation.

- AEP and Indiana Michigan Power Company failed to provide their deckhands with proper and safe working guidelines specifically for this operation.

- AEP and Indiana Michigan Power Company failed to have a standard periodic inspection of their equipment. There are no written guidelines, policies or procedures regarding what are acceptable or not acceptable in way swapping out barges and the Safety Video produced for this operation does not reflect the actual operation.

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

- The Captain's Clay explanation of providing enough slack in the wires for a deckhand to handles ignore the fact that there wires were over 175' in length and during our inspection of September 25, 2003, the actions of the tug captain caused a soft safety line to break right in front of the deckhand. The tug has to maneuver with full power to get the desired slack in these wire cables both ahead and astern. This entire operation is unsafe and should be abandoned immediately. It is solely predicated upon one man handling a wire up to 175' in length by himself at a height differential of eight feet (8') or more.

- Complaints of this operation by the deckhands went unanswered by Captain Clay as well as request for medical attention:

  a) Captain Clay refused to allow Mr. Nicholls fill out an accident report because Mr. Nichols could not identify how he hurt his shoulder. Timmothy Ramey page 39 lines 1-6.

  b) Captain Clay ignored complaints from Mr. Ramey about the slack in the cables Timmothy Ramey page 39 lines 14-19.

  c) Mr. Ramey experience not enough slack in cable where it almost pulled him in the river page 44 lines 1-8 and pages 46 lines 16-25.

This report has been prepared at the request of Mr. Gary Baun of the Law Firm O'Bryan, Baun, & Cohen, the undersigned reserves the right to amend this report should further information become available and or another inspection of the vessel/facility be carried out.

**Captain R.L.Campana  A.M.S 161**

This report is intended for the sole use of the person or organization to whom it is addressed, and no liability, of any nature whatsoever shall be assumed to any other party in respect of it's contents. This document does not make any warranty expressed or implied, concerning the inaccuracy in any document issued. As to the addressee, neither the Company nor the undersigned shall be liable for any loss or damage whatsoever suffered by virtue of any act, omission or default (whether arising by negligence or otherwise) by the undersigned, the Company or any of it's servants.

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

### *Captain Ronald L. Campana*

**PERSONAL DATA**:
Date of Birth:          October 17,1947
Marital Status:        Married, four children

Honorable discharge U.S.N.R. Lt.(jg) 1975

2001-PRESENT ***PARTNER, CAPTAIN JOE GRACE SURVEYORS,LLC.-HOUSTON***
An independent Marine/Cargo surveying firm, providing service to the Steamship, Oil Field and Insurance industries. Involved in Cargo Condition Surveys, Damage Condition Surveys, Hull Condition, On/Off Hires, Wharf Damage, Intermodal Equipment, Valuations, Port Captain Service, Grain and Stability Calculations, Owners Representation, Personal Injury, Expert Witness Testimony, Accident Reconstruction, Consulting and Stevedore Protection, Deadweight and Draft Surveys , Barge Surveys.

1993-PRESENT ***PARTNER, FEDERAL MARINE BUREAU, LLC.- NEW ORLEANS***
An independent Marine/Cargo surveying firm, providing service to the Steamship, Oil Field and Insurance industries. Involved in Cargo Condition Surveys, Damage Condition Surveys, Hull Condition, On/Off Hires, Wharf Damage, Intermodal Equipment, Valuations, Port Captain Service, Grain and Stability Calculations, Owners Representation, Personal Injury, Expert Witness Testimony, Accident Reconstruction, Consulting and Stevedore Protection, Deadweight and Draft Surveys , Barge Surveys.

1983-PRESENT ***PRESIDENT***, CAMPANA MARINE SERVICE, INC.-*NEW ORLEANS*
 An independent Marine/Cargo surveying firm, providing service to the Steamship, Oil Field and Insurance industries. Involved in Cargo Condition Surveys, Damage Condition Surveys, Hull Condition, On/Off Hires, Wharf Damage, Intermodal Equipment, Valuations, Port Captain Service, Grain and Stability Calculations, Owners Representation, Personal Injury, Expert Witness Testimony, Accident Reconstruction, Consulting and Stevedore Protection, Deadweight and Draft Surveys, Barge Surveys.

1981-1983 **Thompson Marine Services, Inc**., New Orleans, LA. Staff Surveyor for Gulf Coast area as an independent Marine/Cargo Surveyor.

1971-1981 ***MASTER, CHIEF/SECOND/THIRD OFFICER***.  Sailed aboard various company, union and non-union vessels ranging from Great Lake Vessel's, LASH Vessels, Ocean Tankers and Freighters, Oil Field Supply and Tug vessels.

1975-1976 ***PRUDENTIAL LINES, INC***., New York, N.Y. **Operation Manager** of all LASH barges worldwide. Responsible for all towing and cargo operations as well as & Maintenance & Repair.

## TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally

1973 **BUNGE GRAIN CORP.**, New Orleans, La. *Loading Port supervisor* responsible for safe loading of Chartered Bulk Carriers in the Mississippi River.

1971-1972 **Ann Arbor Railroad Company**, Frankfort, Michigan. Sailed as Chief, Second and Third mate aboard various company vessels under my First Class Pilot license.

### EDUCATION

**GRADUATE OF THE UNITED STATES MERCHANT MARINE ACADEMY**, Kings Point, N.Y. with a Bachelor of Science Degree in Marine Transportation and a Third Mates Ocean unlimited license.

**National Cargo Bureau Grain Stability Certificate** 1982

**Copyright Author** of a river barge **Draft Survey Program** that has become industry standard in the bulk industry.

### PROFESSIONAL LICENSES HELD

*MASTER UPON THE OCEANS UNLIMITED TONNAGE, PANAMA

*MASTER UPON THE OCEANS 3000 TONNAGE ITC and SECOND MATE UNLIMITED TONNAGE, US

*MASTER OF TOWING VESSELS UPON GREAT LAKES, WESTERN RIVERS AND INLAND WATERS.

*FIRST CLASS PILOT UPON WATERS LAKE MICHIGAN

### PROFESSIONAL ASSOCIATIONS

SOCIETY OF NAVAL ARCHITECHS AND MARINE ENGINEERS, Member.

SOCIETY OF ACCREDITED MARINE SURVEYORS, member Deep Sea division as well as small craft division, Seal No.161.

**TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally**

Captain Campana is a graduate of the United States Merchant Marine Academy, Kings Point, N.Y. He has sailed in various capacities as an officer and master aboard US Flagged vessels. Captain Campana came ashore in 1981 and was trained by an existing marine surveying firm, as a Marine Surveyor, that is no longer in business. In 1993 Captain Campana formed his own company, Campana Marine Service, Inc. In 1994, Captain Campana with four others formed the Federal Marine Bureau, Inc. In 2000, the company was reorganized and changed to the Federal Marine Bureau, LLC with only two partners and is in addition to Campana Marine Service, Inc. On December 31, 2001 Captain Campana and Mr. Westgate bought out Captain Joe Grace Surveyors and Associates in Houston, Texas and renamed the company Captain Joe Grace Surveyors, LLC.

Captain Campana has testified in Federal and State courts and in depositions since 1995 as an expert witness in:

a) As an expert on tugs and dredging operations and the proper procedure when towing barges and dredges along the East Coast, in Federal Court Portland, Maine for plaintiff.
b) Deposition in the Cargo gear and wire failure: M/V Pices explorer vs. ITO Corporation for defendant.
c) Deposition and State Court in New Jersey on Boccia vs. Allstate Insurance Co, representing defendant, Allstate, for a fraudulent yacht sinking.
d) Tomas Reyes Cabahung vs. Text Shipping et al on a personal injury on an Accommodation ladder on an OBO, M/V Niki in Federal Court, Baton Rouge for plaintiff.
e) Deposition in Sunset Services as owner of Rig 11 in exoneration from Limitation of liability.
f) Deposition in Abner V. Gaitano vs. Desford Shipping, Inc. as expert witness for injured Chief Engineer.
g) River Cement Company vs. CGB Fleeting. As an expert in Navigation for berth owner in Federal Court N.O.
h) As an expert witness in vessel damages in Newcastle P & I vs. Owners of M/V Palm Pride.
i) Deposition in Rockwell vs. Waterways Towing as expert in towing operations for third party defendant.
j) Deposition in Itochu/Steel coils vs. Ceres Gulf as expert in steel cargo for defendant.
k) Deposition and LA State Court testimony as Expert in Marine Safety Duzon vs. Cal Dive for plaintiff.
l) Deposition in Moran vs. Weeks as a stevedoring expert for defendant.
m) Federal Court New Orleans as a stevedoring expert, cargo expert and expert marine surveyor in Sean Duffy vs. M/V 60 Let Oktyabrya for plaintiff.
n) Civil District Court New Orleans in Dennis Savoie v Aztech towing as an expert in marine safety for plaintiff.
o) Federal Court Western District Louisiana in Seth Becker v Tidewater Marine et al as an expert in vessel operations and boat handling, for plaintiff.

## TEDDY NICHOLS vs. INDIANA MICHIGAN POWER COMPNAY RIVER TRANSPORTATION DIVISION and/or AMERICAN ELECTRIC POWER FUEL SUPPLY, RIVER TRANSPORTATIOIN DIVISION, Jointly and severally

p) Deposition and Federal Court, Illinois, in Huffman Towing v G.J. Leasing Co. et al as an expert in stevedoring operations and cargo stowage for defendant ITO Corporation.

q) Deposition in Michael Wills v Martin Oil Company as an expert for Plaintiff in marine safety.

r) Federal Court New Orleans in Hawsphere v Coastal Cargo as an expert in marine surveying for defendant.

s) Deposition in Eldridge vs. Ingram Barge Lines as an expert in marine safety for plaintiff.

t) Deposition in Rudolph Washington vs. ACBL Barges Lines et al as an expert in marine safety and stevedoring operations for defendant, Maritrend, Inc.

u) Federal Court Houma/New Orleans in Todd Ballard Hines v In the Matter of the Complaint of Bruce Investment Co., Inc. as the Owner of the M/V Supplier and Gulf Trans Inc. as the Operator of the M/V Supplier as an expert in vessel operations and marine safety for Plaintiff.

v) State Court Louisiana in Kevin Little v LUMCOM as expert in vessel operations and marine safety for plaintiff.

w) Deposition as expert witness in stevedoring operation in M/V Jin Yi vs. Associated Terminals, inc. for defendant.

x) Trial in Federal Court, Houston, TX as expert for defendant in Dalmine S.P A and Siderca Corporation vs. M/V BBC Frisca case No. C.A.H-02-4757 for Defendant.

y) Deposition in Robin v Stone Energy Corporation CA. No. 02-2969 for plaintiff as expert in navigation.

z) Trial in Court of Common Pleas, Philadelphia for defendant in Donald Bayne V Norfolk Dredging Company, case No.0369 as an Expert in Marine Safety, Vessel operations and Towing Operations.

aa) Deposition in Hites v Midland CASE NO: 3:01:cv0047 – H Western District Kentucky Federal Court as Marine Safety and Rules of the Road expert for plaintiff  Nov.2003

bb) Deposition in Samuel Cuervas Bonilla v Carnival Corporation as Marine Safety Expert for Plaintiff; Nov 2003

cc) Deposition in Karl Cox v Cooper/T.Smith as an expert in stevedoring operations and Marine Safety for Defendant; Nov 2003

dd) Deposition in Muchowski v Algarve Shipping as an expert in marine safety for Plaintiff, Dec 2003